FILED
2014 Aug-19  PM 01:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION**

| | |
|---|---|
| STEVEN CRAIG TAYLOR, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )    Case No.: 3:11-cv-1560-SLB-SGC |
| | ) |
| WARDEN WILLIE THOMAS, and the | ) |
| ATTORNEY GENERAL OF THE | ) |
| STATE OF ALABAMA, | ) |
| | ) |
| Respondents. | ) |

**<u>MEMORANDUM OPINION</u>**

Petitioner, Steven Craig Taylor ("Taylor"), an Alabama state prisoner, filed this *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("Petition") on May 11, 2011. (Doc. 1). In response to the show cause order issued by the previously assigned magistrate judge, Respondents exclusively argued the Petition was untimely. (Doc. 4). After Taylor replied, the previously assigned magistrate judge entered a report and recommendation concluding the Petition was due to be dismissed as time barred. (Doc. 7). Having received no objections from either party, the Court adopted the report and recommendation and entered final judgment on December 17, 2013. (Docs 8-9).

Subsequently, Taylor moved to reopen these proceedings, claiming he never received the report and recommendation due to a transfer to a different prison. (Doc. 10). The court granted Taylor's motion and withdrew its final judgment. (Doc. 11). Thereafter, Taylor filed objections to the report and recommendation. (Doc. 12). Taylor's objections include new arguments—or at least more thoroughly enunciated arguments—regarding why equitable tolling applies to render the Petition timely. In light of these arguments, the previously assigned magistrate judge's report and

recommendation is due to be accepted in part and rejected in part.  However, as explained below,

resolution of the equitable tolling issue is unnecessary because the Petition is meritless.

I.    **FACTS**

> The facts set forth in the report and recommendation are as follows:

> In October, 2007, a Lauderdale County jury found Taylor guilty of second degree rape and second degree sexual abuse of his cousin.  (Doc. # 4 at 2).  He was sentenced to 20 years and 10 years, respectively, with the sentences to run concurrently.  At the time that Taylor committed these crimes in 2003, he was 20 years old; the victim was 13. (Doc. # 4-2 at 62-63, 72).   Taylor timely appealed, claiming ineffective assistance of counsel.  On May 20, 2009, the Alabama Court of Criminal Appeals issued a Certificate of Judgment affirming Taylor's conviction. (Doc. # 4-1 at 2).  Thereafter, on December 21, 2009, Taylor filed a Rule 32 petition with the state court.  This petition was summarily dismissed because Taylor neither paid his filing fee, nor moved for in forma pauperis status.  (Docs. ## 4-9, 4-10).

> On March 4, 2010, Taylor filed a second Rule 32 petition on various grounds, including ineffective assistance of counsel.  (Doc. # 4-12 at 2).  Additionally, Taylor's second Rule 32 petition alleged, for the first time, that he suffers from a life-long mental disability.  (Doc. # 4-12 at 86).  Specifically, Taylor alleges that he is "Educable Mentally Retarded" ("EMR").  (Doc. # 4-12 at 104).  During the evidentiary hearing concerning Taylor's second Rule 32 petition, Taylor's elementary school special education teacher, Steven Jones ("Jones"), gave expert testimony regarding Taylor's EMR status.  (Doc. # 4-12 at 102-111).  Jones testified that, in order to qualify for EMR classes, one must have an I.Q. of approximately 70 or below. (Doc. # 4-12 at 105).  Jones did not remember precisely what Taylor's I.Q. score was, but he testified that Taylor qualified as EMR.  (Doc. # 4-12 at 108). While Jones's last contact with Taylor was when Taylor  was approximately 10 or 11 years old (approximately 10 years before he committed the rape), Jones further testified that Taylor's I.Q. would not have changed significantly and that he was still suffering from EMR.  (Doc. # 4-12 at 110-111).  After the evidentiary hearing, the trial court denied Taylor's second Rule 32 petition and Taylor appealed.  The Court of Criminal Appeals affirmed the trial court's denial and, after denying Taylor's application for rehearing, issued a certificate of judgment on January 26, 2011. (Doc. # 4-11 at 2).  Taylor filed the instant petition on May 10, 2011.

> According to Taylor's briefs, all of his pro se filings, whether in state or federal court, have been prepared entirely by his fellow inmates.  The Reply, prepared by inmate Jason Rogers, states that Taylor cannot read or write and that he is mentally incompetent due to his EMR.  (Doc. # 6 at 8-9).  Additionally, the Reply

recounts a series of difficulties Taylor encountered with the inmates who prepared his various pro se filings.  Jason Rogers assisted Taylor in his pro se appeal of the trial court's denial of Taylor's second Rule 32 petition.  (Docs. ## 6-1, 6-2).  After the Court of Criminal Appeals denied Taylor's Application for Rehearing, Jason Rogers was planning on filing a writ [of] certiorari.  Instead, two other inmates convinced Taylor to abandon Jason Rogers[ ] and to hire them to prepare the writ instead.  (Doc. #6 at 9).  After charging Taylor $300 . . . , these two inmates were transferred to a different correctional facility.  (*Id*.).  The Reply cites this as "a clear example of Petitioner Taylor's EMR or mental defect;" it is the only such example that appears in the briefs.  (*Id*.).  Thereafter, Taylor paid another inmate to prepare this [Petition].  (*Id*.).  Following the Government's Response to the Order to Show Cause, Taylor enlisted Jason Rogers to draft his Reply.  (*Id*.).

(Doc. 7 at 1-3).

On these facts, the previously assigned magistrate judge recommended dismissal of the Petition as time barred.  (*Id*. 7).  As part of his analysis, the magistrate judge noted Taylor's failure to plead facts that would entitle him to equitable tolling.  (*Id*. at 7).  However, in his objections, Taylor argues for the first time—or at least explicitly articulates for the first time—his EMR status essentially creates a *per se* rule entitling him to equitable tolling.  (*See generally* Doc. 12).  Taylor's salient objections, based largely upon *Hunter v. Ferrell*, 587 F.3d 1304 (11th Cir. 2009), cast doubt upon the magistrate judge's conclusion that equitable tolling does not apply.  However, even if equitable tolling applies to save Taylor's otherwise untimely claims, it would merely entitle Taylor to a determination of his claims on the merits.  Accordingly, for purposes of this opinion, the court assumes, without deciding, that Taylor is entitled to equitable tolling.  As explained below, Taylor's claims fail on the merits.  However, because the initial briefing and report and recommendation were limited to the issue of timeliness, it is necessary to recite additional facts regarding the merits of Taylor's claims.

The Petition asserts six (6) grounds for habeas relief.  (Doc. 1 at 6-8).  Four (4) grounds

allege ineffective assistance of counsel related to trial counsel's failure to: (1) cross-examine the victim; (2) object to opinion testimony offered by a non-expert; (3) adequately develop the record prior to trial; and (4) request a mental evaluation of Taylor. (Doc. 1 at 6-7). The Petition also asserts Taylor's appellate counsel was ineffective for failing to challenge a defective indictment on appeal. (Doc. 1 at 7).[1]  Finally, Taylor contends his EMR status constitutes newly discovered evidence of a mental disease or defect which would have provided an affirmative defense at trial. (Doc. 1 at 8). Taylor presented many of these claims—or similar claims—in his second Rule 32 petition. (*See* Doc. 4-12 at 83-87).[2]  After holding an evidentiary hearing, the sentencing court denied Taylor's claims on the merits, as explained in more detail below.

## II.    DISCUSSION

Claims of ineffective assistance of counsel are governed by the standard set forth in *Strickland v. Washington,* 466 U.S. 668 (1984). In *Strickland,* the Supreme Court established a two-prong test for adjudicating ineffective assistance of counsel claims; both prongs of the test must be met for the petitioner to succeed. *Id.* at 687. First, a petitioner must show counsel's performance was deficient, i.e., outside the range of professionally competent assistance. *Id.* The proper measure of an attorney's performance is "reasonableness under prevailing professional norms." *Id.* at 688.

---

[1] The heading for this claim indicates that it is aimed at Taylor's trial counsel. (Doc. 1 at 7). However, the substance of the claim reveals that Taylor's appellate counsel is the actual target. (*Id.*).

[2] While not addressed in the report and recommendation, it is apparent that Taylor never exhausted his remedies in State court by presenting his claims to the Alabama Supreme Court. 28 U.S.C. § 2254(b)-(c). However, Taylor's arguments that his EMR entitles him to equitable tolling could also apply to excuse his failure to exhaust his claims.  This is especially so in light of Taylor's allegations that unscrupulous inmate law clerks took advantage of Taylor and denied him the opportunity to seek certiorari on the Rule 32 Petition.  Accordingly, the court assumes, without deciding, that Taylor has pled facts sufficient to excuse his procedural default.

4

Unless the petitioner can rebut the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," he cannot show counsel's performance was constitutionally deficient.  *Id.* at 689.  "The test has nothing to do with what the best lawyers would have done.  Nor is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial."  *White v. Singletary,* 972 F.2d 1218, 1220 (11th Cir. 1992); *see also Waters v. Thomas,* 46 F.3d 1506, 1514 (11th Cir. 1995) (stating "perfection is not the standard of effective assistance").[3]

Moreover, where a petitioner challenges tactical decisions made by trial counsel, he "must establish that *no competent counsel would have taken the action that his counsel did take.*" *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis in original); *see Holladay v. Haley,* 209 F.3d 1243, 1253 n.6 (11th Cir. 2000) ("A tactical decision is ineffective only 'if it was so patently unreasonable that no competent attorney would have chosen it.'") (quoting *Adams v. Wainwright,* 709 F.2d 1443, 1445 (11th Cir.1983)).  The inquiry is whether, from an objective perspective, some reasonable attorney could have acted as the petitioner's attorney did.  *See Waters,* 46 F.3d at 1512.

Second, a petitioner must establish prejudice, such that there is a reasonable probability that, absent counsel's errors, the outcome of the proceeding would have been different.  *Strickland,* 466 U.S. at 694; *Chandler v. United States,* 218 F.3d 1305, 1312–13 (11th Cir. 2000).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S.

---

[3] Indeed, the Supreme Court has warned against second-guessing professional judgments made by counsel: "Judicial scrutiny of counsel's performance must be highly deferential," and a court should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland,* 466 U.S. at 689.

at 694.  Because the petitioner must meet both parts of the test, the court does not need to address

the performance prong if the petitioner cannot meet the prejudice prong, and vice versa.  *Holladay,*

209 F.3d at 1248.

In addition to the deferential standard set forth above, absent narrow exceptions, a federal

court hearing a State prisoner's habeas petition must defer to State court adjudications of ineffective

assistance claims.  As relevant here, section 2254 provides:

(d)  An application for a writ of habeas corpus on behalf of a person in custody
pursuant to the judgment of a State court shall not be granted with respect to any
claim that was adjudicated on the merits in State court proceedings unless the
adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable
application of, clearly established Federal law, as determined by the Supreme
Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of
the facts in light of the evidence presented in the State court proceeding.

(e)(1)  In a proceeding instituted by an application for a writ of habeas corpus by a
person in custody pursuant to the judgment of a State court, a determination of a
factual issue made by a State court shall be presumed to be correct.  The applicant
shall have the burden of rebutting the presumption of correctness by clear and
convincing evidence.

(2)  If the applicant has failed to develop the factual basis of a claim in State court
proceedings, the court shall not hold an evidentiary hearing on the claim unless the
applicant shows that–

(A) the claim relies on–

(I) a new rule of constitutional law, made retroactive to cases on
collateral review by the Supreme Court, that was previously
unavailable; or

(ii) a factual predicate that could not have been previously discovered
through the exercise of due diligence; and

> (B) the facts underlying the claim would be sufficient to establish by clear
> and convincing evidence that but for constitutional error, no reasonable
> factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(d)-(e).

In addition to the foregoing framework, habeas petitions are subject to rigorous pleading standards. The burden of proof is on the habeas petitioner "to establish his right to habeas relief and he must prove all facts necessary to show a constitutional violation." *Blankenship v. Hall,* 542 F.3d 1253, 1270 (11th Cir. 2008). To carry his burden, "a petitioner must state specific, particularized facts which entitle him or her to habeas corpus relief for each ground specified. These facts must consist of sufficient detail to enable the court to determine, from the face of the petition alone, whether the petition merits further habeas corpus review." *Adams v. Armontrout,* 897 F.2d 332, 334 (11th Cir. 1990); *see also Beard v. Clarke,* 18 Fed. Appx. 530, 531 (9th Cir. 2001) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief. . . . Notice pleading is insufficient; the petitioner must state sufficient facts.").

Having set forth the general framework applicable to Taylor's claims, each ground asserted in the Petition is addressed in turn below.

## A.    Trial Counsel's Failure to Cross-Examine the Victim.

The entirety of Taylor's argument regarding trial counsel's failure to cross-examine the victim is as follows:

> Petitioner's trial counsel rendered ineffective assistance of counsel by his failure to cross-examine the alleged victim/witness while stating that his reasons for failing to do so was because he did not want to upset her on the stand.

(Doc. 1 at 6). In ruling on Taylor's identical claim in his Rule 32 petition, the sentencing court held "[t]he strategy of not subjecting a sympathetic victim to rigorous cross examination falls well above

the objective standard of reasonableness and does not demonstrate a deficient performance on trial counsel's behalf." (Doc. 4-12 at 91). Accordingly, the sentencing court denied this claim on the merits, at least regarding the question whether Taylor's trial counsel performed deficiently.

Because the sentencing court denied this claim on the merits, this court cannot grant habeas relief on this basis unless the trial court's decision was contrary to clearly established Federal law, as determined by the Supreme Court or resulted in an unreasonable determination of facts in light of the evidence. 28 U.S.C. § 2254(d). Additionally, even if this court could grant relief on this claim, the sentencing court's ruling is presumed to be correct. Taylor can only overcome this presumption by presenting clear and convincing evidence to the contrary. 28 U.S.C. § 2254 (e)(1). Taylor does not make–nor even attempt to make–the required showings under either § 2254 (d) or (e).

Furthermore, even if Taylor had satisfied the statutory prerequisites, the undersigned would agree with the sentencing court's adjudication of this claim for ineffective assistance of counsel. Whether to subject a sympathetic witness to cross examination is a tactical decision. The undersigned agrees that competent, reasonable attorneys could have decided to forego cross-examination of a young woman alleging she was raped by her then twenty year-old cousin when she was thirteen. Accordingly, to the extent the court has authority to address this claim, it is due to be denied. Taylor's trial counsel did not perform deficiently on this basis. *Grayson*, 257 F.3d at 1216; *see Holladay*, 209 F.3d at 1253 n.6; *Waters,* 46 F.3d at 1512. Likewise, Taylor does not present any argument that he suffered prejudice as a result of the supposed deficient performance. Accordingly, any relief based on Taylor's trial counsel's failure to cross-examine the victim is due to be denied.

### B.    Trial Counsel's Failure to Object to Opinion Testimony

Next, Taylor claims Amy Clingon, the church counselor to whom the victim first reported the crime, offered opinion testimony without being qualified as an expert. (Doc. 1 at 6).  Taylor alleges his trial counsel was ineffective for failing to object on this basis.  (*Id.*).  There are no additional facts regarding this allegation in the Petition.  The sentencing court denied this Rule 32 claim on the merits, holding:

> The testimony of the witness Amy Clingon concerning the demeanor of the victim is cumulative to the testimony of other witnesses with unquestioned credentials.  Her opinion testimony does not establish the defendant's innocence.  Nothing in the attorney's handling of the witness is evidence of ineffective trial counsel.

(Doc. 4-12 at 92).  As with Taylor's first claim for ineffective assistance of counsel, he neither establishes that this court can adjudicate this claim nor overcomes the presumption of correctness applicable to the Rule 32 court's adjudication on the merits.  *See* 28 U.S.C. § 2254(d)-(e). Additionally, even if Taylor had made such showings, this claim does not satisfy the applicable particularized pleading requirements for § 2254 claims; nowhere in his filings has Taylor sufficiently alleged prejudice under *Strickland* regarding this claim.  For all of the foregoing reasons, any relief Taylor seeks based on trial counsel's failure to object to Amy Clingon's testimony is due to be denied.

### C.    Appellate Counsel's Failure to Challenge the Indictment.

Taylor also claims his appellate counsel offered ineffective assistance by failing to challenge an allegedly defective indictment.  The entirety of Taylor's argument is as follows:

> The Petitioner's appeal counsel was ineffective in that he failed to raise the issue of the defective indictment that was raised before the trial court by his trial counsel, specifically, that the indictment was defective because it failed to allege or include a 'mens rea' and or 'guilty intent,' as is required by law.

9

(Doc. 1 at 7). Even assuming such bare allegations were sufficient to state a claim for ineffective assistance of appellate counsel, the claim is devoid of colorable merit. Taylor was indicted on two counts: second degree rape and second degree sexual abuse under Alabama law. Both crimes describe strict liability offenses for which *mens rea* is not a required element. ALA. CODE §§ 13A-6-62, 67; *see U.S. v. Owens*, 672 F.3d 966, 972 (11th Cir. 2012) (describing second degree rape under Alabama law as "a strict liability offense because it contains no *mens rea* requirement"). Accordingly, the indictment was not flawed for failing to include non-existent *mens rea* elements. The failure of Taylor's appellate counsel to raise a non-existent issue on appeal cannot serve as the basis for a claim of ineffective assistance of counsel. For the foregoing reasons, any relief sought on the basis of appellate counsel's failure to challenge the indictment is due to be denied.

### D.   Trial Counsel's Failures Regarding Taylor's EMR Status.

Taylor asserts three claims based on his EMR status: two ineffective assistance of counsel claims and one claim that his EMR status represents newly-discovered evidence. (Doc. 1 at 6-8). First, Taylor contends that, had his trial counsel adequately developed the record prior to trial, he would have discovered Taylor's mental disability. (Doc. 1 at 6-7). Next, and on a related note, Taylor alleges his lawyer's failure to request a mental examination constitutes deficient representation. (Doc. 1 at 7). Taylor's final claim asserts his trial counsel should have pursued an insanity defense due to his EMR status; Taylor contends his EMR status and other mental problems constitute newly discovered evidence allowing the court to address the question. (Doc. 1 at 8).

Taylor's competency to stand trial under ALA. R. CRIM. P. 11.1 was not addressed in the Rule 32 briefs or during the evidentiary hearing. Instead, the Rule 32 arguments related to Taylor's EMR

10

status were limited to trial counsel's failure to discover and use it as a basis for asserting an affirmative insanity defense pursuant to ALA. CODE § 13A-3-1. (Doc. 4-13 at 29-41; Doc. 4-12 at 102-111). In support of his claims, Taylor's Rule 32 counsel called Taylor's special education teacher, Steven Culla Jones ("Jones"), to testify at the evidentiary hearing. In addition to the testimony noted in the report and recommendation, Jones testified that Taylor generally, although not always, understood the difference between right and wrong. (Doc. 4-12 at 105). EMR was Taylor's only mental diagnosis of which Jones was aware. (Doc. 4-12 at 107). Jones could not recall Taylor's I.Q. score. Instead, Jones merely remembered that Taylor qualified as EMR, meaning that his I.Q. was approximately 70 or below. (Doc 4-12 at 108). Jones opined that if Taylor initiated sexual activity that was not rebuffed, he would continue with the conduct. (Doc. 4-12 at 106). Although Jones's last interaction with Taylor was approximately ten (10) years before the Rule 32 evidentiary hearing, he testified Taylor continued to qualify as EMR. (Doc. 4-12 at 109-10). However, Jones admitted he could not speak to Taylor's state of mind at the time of the crime. (Doc. 4-12 at 109-10).

The sentencing court denied Taylor's EMR-related claims on the merits, holding:

There is no evidence that the defendant's allegedly low I.Q. rises to the level of a severe mental disease or defect. The court finds that the defendant does not have a mental disease or defect defense and the failure of the defense attorney to detect it, much less to assert it, does not constitute ineffective assistance of counsel.

(Doc. 4-12 at 91). The Alabama Court of Criminal Appeals affirmed the denial of the Rule 32 petition. (Doc. 4-15). Having set forth the additional facts relevant to the Rule 32 proceedings, the court next turns to the merits of Taylor's EMR-related claims.

11

In order to obtain relief on the basis of his EMR status, Taylor must show the Rule 32 court's decision was either: (1) contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court; or was (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  Taylor appears to rely on the argument that the sentencing court made an unreasonable determination of the facts in light of the evidence presented at the Rule 32 hearing.

Under Alabama law, a defendant may assert an affirmative insanity defense if, at the time of the offense, "the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or wrongfulness of his acts."  *Ala. Code* § 13A-3-1(a).  The defendant has the burden of proving this defense by clear and convincing evidence.  *Id.* at § 13A-3-1(c).  At the Rule 32 hearing, Jones testified Taylor generally knew the difference from right and wrong. Accordingly, the sentencing court's determination that Taylor did not suffer from a mental disease or defect was consistent with the evidence presented at the hearing.  Taylor's EMR-related claims must be denied under § 2254(d).

Even if relief on this claim was not barred under § 2254(d), Taylor cannot overcome the presumption of correctness applicable to the sentencing court's factual finding that he did not have a severe mental disease or defect.  28 U.S.C. § 2254(e).   The Petition asserts "it would be obvious to anyone who converses with the Petitioner that he suffers from a mental disease or defect or is otherwise mentally retarded." (Doc. 1 at 7). The only other evidence or argument regarding Taylor's mental status is the affidavit of Timothy Richards, the law clerk at Limestone Correctional Facility who drafted Taylor's Objections.  In his affidavit, Richards states his belief that Taylor has an I.Q. "much lower than 70." (Doc. 12 at 20).  Richards also avers he has "a difficult time trying to get

[Taylor] to relate facts to me concerning his case in a comprehensible manner so that I can understand his case and its facts so as to be able to prepare pleadings in his case for him." (Doc. 12 at 20-21). These assertions are not sufficient to satisfy the preconditions of § 2254 (d) or the presumption of correctness under § 2254 (e). As such, Taylor's ineffective assistance claim based on trial counsel's failure to detect his EMR status is due to be denied. For the same reason, Taylor's trial counsel was not ineffective for failing to assert an affirmative defense based on Taylor's EMR status.

Next, to the extent the Petition asserts Taylor's EMR rendered him incompetent to stand trial, those claims were never presented to the trial court. As noted above, all of Taylor's EMR-related claims during the Rule 32 proceedings were limited to whether his mental status would have provided the basis for an insanity defense. Because Taylor failed to pursue and develop the record on any claim of incompetence before the sentencing court, this court cannot even hold an evidentiary hearing on the matter unless Taylor meets the requirements set forth in § 2254(e)(2). Because Taylor's argument does not rely upon any new rules of constitutional law, he must show newly-discovered facts which "would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact-finder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254(e)(2).

Here, Taylor contends his EMR status constitutes "newly discovered evidence." (Doc. 1 at 8). This contention is simply wrong. Taylor's EMR was the basis for many of his Rule 32 claims. Obviously, Taylor knew of his mental disability while the Rule 32 petition was pending. Accordingly, Taylor's failure to develop the Rule 32 court's record regarding his claim of incompetence is fatal to the instant claim. Even if this court were inclined to hold an evidentiary

hearing on the issue of Taylor's competence to stand trial, such a hearing would be foreclosed under § 2254(e)(2).  For all of the foregoing reasons, any relief based on Taylor's EMR and/or  alleged incompetence to stand trial is due to be denied.

## III.    CONCLUSION AND CERTIFICATE OF APPEALABILITY

For all of the foregoing reasons, the report and recommendation of the formerly assigned magistrate judge is hereby **ADOPTED IN PART** and **REJECTED IN PART**.  In particular, the court **ADOPTS** the facts set forth in the report and recommendation.  However, in light of Taylor's objections regarding his inability to timely file the Petition due to his EMR status, the court **REJECTS** the conclusion that Taylor is not entitled to equitable tolling.  Instead, as explained above, Taylor's claims fail on the merits.  As such, the Petition is due to be **DENIED** and **DISMISSED WITH PREJUDICE**.  A separate order effectuating this opinion will be entered.

Finally, pursuant to Rule 11 of the *Rules Governing Section 2254 Cases,* the court must issue or deny a certificate of appealability.  A certificate of appealability may issue only "if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make such a showing, a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Lennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).  As explained above, all of Taylor's claims are due to be denied as meritless.  Accordingly a certificate of appealability will be **DENIED**.

14

**DONE** this 19th day of August, 2014.

SHARON  LOVELACE  BLACKBURN
UNITED STATES DISTRICT JUDGE